1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF ALASKA**

10

11

12 **Andrea Richey, *et al*.,**

13                 **Plaintiffs,**                    **3:14-cv-00170 JWS**

14           **vs.**                                  **ORDER AND OPINION**

15 **Matanuska-Susitna Borough,**                     **[Re: Motion at Docket 21]**

16                 **Defendant.**

17

18                     **I.  MOTION PRESENTED**

19        At docket 21 plaintiffs Andrea Richey, *et al*. (collectively, "plaintiffs") move for

20 class certification on each of their claims against Defendant Matanuska-Susitna

21 Borough ("the Borough") pursuant to Rule 23 of the Federal Rules of Civil Procedure.

22 The Borough opposes at docket 36.  Plaintiffs reply at docket 41.  Oral argument was

23 not requested and would not assist the court.

24                       **II.  BACKGROUND**

25        The State of Alaska's ("the State's") Public Employees Retirement System

26 ("PERS") provides retirement, disability, and death benefits to certain public

27

28

employees.[1]  The Borough entered into a contractual agreement with the State to participate in PERS in 1968 ("the Participation Agreement").[2]  Plaintiffs allege that this contract requires the Borough to enroll its employees in PERS once "the employee [is] employed by [the Borough] in a qualified position, receive[s] PERS-eligible compensation, and [is] eligible to make PERS contributions."[3]

Plaintiffs and the putative class members are former and current Borough employees.  They refer to themselves as "disfavored personnel," meaning that they are "permanent part-time and/or permanent full-time [Borough] employees denied PERS benefits."[4]  Plaintiffs assert that they are actually PERS-eligible because they (1) "either initially and/or routinely" worked sufficient hours per week (15 hours per week for part-time employees and 30 hours per week for full-time employees); and (2) worked an unspecified "sufficient" amount of hours per annum "during many, most and/or all years" of employment.[5]

Plaintiffs filed their complaint in state court in January 2013 and moved for class certification before discovery had been conducted.  The Alaska Superior Court denied their motion, ruling that plaintiffs failed to "provide information to establish each of the requirements for class certification."[6]  The denial was issued without prejudice to plaintiffs' ability to renew their motion after completion of discovery.  Before renewing

---

[1]AS 39.35.001.  *See also* AS 39.35.600 (stating that eligible employees of a "participating political subdivision" of the State are entitled to PERS benefits).

[2]Doc. 8-20 at 2 ¶ 8.

[3]Doc. 8-32 at 2 ¶ 9.

[4]Doc. 25 at 8 n.20.

[5]Doc. 25 at 4.

[6]Doc. 8-26 at 4.

1 their motion, plaintiffs amended their complaint to add a 42 U.S.C. § 1983 claim. This

2 led the Borough to remove the case to federal court pursuant to 28 U.S.C. § 1441(a).[7]

3       Plaintiffs, in their First Amended Complaint ("Complaint"), claim that the

4 Borough's decision to exclude "disfavored personnel" from PERS is a breach of the

5 Borough's fiduciary duty (Claim 2); a violation of Article XII, section 7 of the Alaska

6 Constitution (Claim 4); a violation of plaintiffs' rights under "express and implied

7 contractual commitments" (Claim 5); a violation of plaintiffs' rights under "the laws and

8 Constitutions of the United States and the State of Alaska," including the right to equal

9 protection of the law (Claim 6); and a violation of AS 23.10.045 (Claim 7). The

10 Complaint also seeks declaratory relief and an injunction requiring the Borough to enroll

11 plaintiffs in PERS retroactively (Claim 3).[8] Plaintiffs seek class certification on each of

12 their claims.

## III. STANDARD OF REVIEW

14       A party seeking class certification bears the burden of satisfying Rule 23(a)'s four

15 requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

16 representation.[9] Additionally, the party must satisfy at least one of the requirements of

17 Rule 23(b), which defines the three different types of class actions. Although the

18 decision to grant or deny class certification is within the trial court's discretion,[10] the

19 court must undertake a "rigorous analysis" to determine whether the party seeking class

20 certification has done more than plead compliance with Rule 23, but instead has

21 affirmatively demonstrated his or her compliance with the Rule.[11]

---

[7]Doc. 1.

[8]Doc. 8-32.

[9]*See Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

[10]*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

[11]*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

## IV.  DISCUSSION

Plaintiffs argue that their claims satisfy all four Rule 23(a) requirements and each claim is suitable for class treatment under either Rule 23(b)(1) or (2).  The Borough contends that plaintiffs' claims satisfy neither Rule 23(a) nor (b) and argues that plaintiffs have failed to demonstrate the existence of an identifiable class.  Because the proposed class definition lacks sufficient definitiveness and because plaintiffs have not demonstrated compliance with Rule 23(a)'s requirements, plaintiffs' motion is denied.[12]

### A.    Plaintiffs Have Not Demonstrated The Existence of an Identifiable and Ascertainable Class

Plaintiffs concede that,[13] "[i]n addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists."[14]  This requirement exists to ensure that the court will be able to determine whether an individual is a class member bound by the judgment.[15]  Although plaintiffs need not identify each class member before certification, plaintiffs must demonstrate that it is administratively feasible to ascertain the class by reference to objective criteria.[16]  "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry."[17]

---

[12]Because plaintiffs have not satisfied Rule 23(a)'s threshold requirements, there is no need to discuss whether their claims are suitable for class treatment under Rule 23(b).

[13]Doc. 25 at 10.

[14]*Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  *See also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3:2 (5th ed. 2014) (hereinafter "*Newberg*") ("[D]efiniteness is an 'essential' element of class certification, that it is implied in Rule 23(a), or that it is encompassed in Rule 23(c)(1)(B).").

[15]*In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *13 (N.D. Cal. June 17, 2014).

[16]*Id*.

[17]*Newberg* § 3:3.

The Borough argues that plaintiffs' class definition is "exceedingly complicated" because it "contains seven discrete subparts"[18] and that the class is insufficiently definite for two reasons.  First, the Borough argues that the court will be required to perform individualized inquiries to determine whether particular individuals (1) "were at all times provided all equipment, tools, clothing, [and] supplies necessary to the performance of their duties"[19] and (2) "routinely" worked sufficient hours.[20]  Second, the Borough argues that, by defining the class as including only Borough employees who were *incorrectly* excluded from PERS, the class is an impermissible "fail-safe class." Fail-safe class definitions earn that title because they require the court to determine the merits of the class members' claims in order to determine class membership.[21]  Courts have held that such definitions run afoul of the definitiveness requirement and are inherently unfair to defendants.[22]

In reply, plaintiffs assert that "the plaintiffs [and their class] are identified by their common, and improper, exclusion from PERS."[23]  In other words, the class is precisely defined as all Borough employees who have been excluded from PERS despite having

---

[18]Doc. 36 at 11.

[19]*Id*. (citing Doc. 25 at 2).

[20]*Id*.

[21]*See Newberg* § 3:6.

[22]*See, e.g., Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (holding that a fail-safe class definition "is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *Chiang v. Veneman*, 385 F.3d 256, 272 (3d Cir. 2004) ("'A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class.'").  *But see In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) (holding that Fifth Circuit precedent rejects the fail-safe class prohibition).

[23]Doc. 41 at 2.

worked "the requisite number of hours" pursuant to AS 39.36.680(32),

AS 39.36.680(33), and the Participation Agreement.[24]

The court finds that plaintiffs' seven-part class definition is unwieldy and does not definitively identify the class. Plaintiffs have not attempted to demonstrate that it will be administratively feasible for the court to identify, without individualized inquiries, all Borough employees to whom the Borough provided "all equipment, tools, clothing, [and] supplies necessary to the performance of their duties," or all employees who "routinely" worked more than 15 or 30 hours per week for a "sufficient" amount of annual hours. Further, plaintiffs do not explain why the Borough's provision of equipment, tools, clothing, and supplies are relevant to this case; or why subparts one, two, three, four, five, and seven of the class definition are not redundant with subpart six.

The streamlined class definition that plaintiffs propose in their reply brief also fails for lack of definitiveness. AS 39.35.680 defines "permanent full-time" employees as those who occupy "a permanent position that regularly requires working 30 or more hours a week,"[25] and "permanent part-time" employees as those who occupy "a permanent position that regularly requires working at least 15 hours but less than 30 hours a week."[26] Plaintiffs do not explain what it means for an employee to "regularly" work either 15 or 30 hours per week, nor do they propose objective criteria for the court to use to make such determinations. Further, plaintiffs assert that there is a minimum amount of hours that an employee must work annually to become PERS eligible, but do not provide that number to the court. Perhaps this number is found in the Borough's Participation Agreement, but that agreement is not in the record.

Because plaintiffs have not provided the court with an objective means for determining which employees have worked the "requisite" number of hours, plaintiffs

---

[24]*Id*. at 1.

[25]AS 39.35.680(32).

[26]AS 39.35.680(33).

1 have not shown that identifying the class members is administratively feasible. Further,

2 without supplying such objective criteria, plaintiffs are essentially seeking certification of

3 a class of Borough employees who were "wrongfully" precluded from PERS. According

4 to persuasive yet unpublished Ninth Circuit caselaw, fail-safe class definitions such as

5 these are impermissible.[27] Plaintiffs' class definition fails for lack of definitiveness.

6 **B.     Plaintiffs Have Not Demonstrated Compliance With Rule 23(a)**

7      Although the Supreme Court and the Ninth Circuit have yet to decisively attach a

8 standard of proof to Rule 23's requirements,[28] the Supreme Court has made clear that

9 "Rule 23 does not set forth a mere pleading standard."[29] Instead, "[a] party seeking

10 class certification must affirmatively demonstrate his compliance with the Rule—that is,

11 he must be prepared to prove that there are *in fact* sufficiently numerous parties,

12 common questions of law or fact, etc."[30] The Alaska Superior Court denied plaintiffs'

13 previous class certification motion because plaintiffs failed to prove—not just

14 plead—compliance with the class certification requirements.[31] The state court allowed

15 plaintiffs to conduct discovery so that they could support a renewed motion with

16

17

18

19     [27]*Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe
appellation is simply a way of labeling the obvious problems that exist when the class itself is

20 defined in a way that precludes membership unless the liability of the defendant is established.
When the class is so defined, once it is determined that a person, who is a possible class

21 member, cannot prevail against the defendant, that member drops out of the class. That is
palpably unfair to the defendant, and is also unmanageable—for example, to whom should the

22 class notice be sent?").

23     [28]*See Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 427 (D. Ariz. 2013); *Parra v.
Bashas', Inc.*, 291 F.R.D. 360, 367 n.5 (D. Ariz. 2013); *Keegan v. American Honda Motor Co.*,

24 284 F.R.D. 504, 521 n.83 (C.D. Cal. 2012); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281
F.R.D. 534, 551 n.88 (C.D. Cal. 2012).

25

26     [29]*Wal-Mart*, 131 S. Ct. at 2251.

27     [30]*Id*. (emphasis in original).

28     [31]Doc. 8-26 at 4-5.

1  "additional facts that support certification."[32]  Despite this clear roadmap, plaintiffs have

2  again failed to support their class certification motion with sufficient facts.

3     **1.     Numerosity**

4     Rule 23(a)(1) provides that a class action may be maintained only if "the class is

5  so numerous that joinder of all members is impracticable."  "'[I]mpracticability' does not

6  mean 'impossibility,' but only the difficulty or inconvenience of joining all members of

7  the class."[33]  There is no bright-line rule regarding how many class members it takes to

8  render joinder impracticable; the specific facts of each case must be considered.[34]

9  "When class size reaches substantial proportions, however, the impracticability

10  requirement is usually satisfied by the numbers alone."[35]  It is generally accepted that

11  "the numerosity factor is satisfied if the class comprises 40 or more members and . . .

12  not satisfied when the class comprises 21 or fewer."[36]

13     With respect to numerosity, plaintiffs' state court class certification motion

14  estimates that the class consists of between 100 and 300 members.  Plaintiffs do not

15  provide any basis for this estimate and instead state that "[i]n discovery, Plaintiffs will

16  obtain from [the Borough] data which will conclusively show which of its past and

17

18

19

---

20     [32]*Id*. at 5.

21     [33]*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)

22  (quoting *Advertising Specialty Nat. Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).

23     [34]*General Tel. Co. of Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).

24     [35]*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

25     [36]*See Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D.
26  334, 346 (N.D. Cal. 2008) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,
   483 (2d Cir.1995); *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y.1998)); *Newberg* §
27  3:12 ("As a general guideline . . . a class that encompasses fewer than 20 members will likely
   not be certified absent other indications of impracticability of joinder, while a class of 40 or more
28  members raises a presumption of impracticability of joinder based on numbers alone.").

present employees worked the requisite number of hours which [sic] should have, but did not, trigger PERS eligibility."[37]

Plaintiffs now "estimate that class numbers will exceed 300." Plaintiffs again do not explain how they arrived at this estimate and again assert they will obtain conclusive data in discovery.[38] This time, however, plaintiffs supply the court with several "attachments" that contain various unauthenticated documents, some of which contain information purportedly relevant to the class's size.[39] One such document is a list of 103 individuals titled "2011 Disfavored Borough Personnel."[40] Plaintiffs do not explain who created this list or how the names on it were generated. Plaintiffs appear to suggest that this list was created by the Borough,[41] but the record is unclear on this point, primarily because the list is unauthenticated.[42] Similarly, plaintiffs provide lists that purportedly contain the names of Borough emergency personnel who "triggered PERS" from 2011-2013.[43] Plaintiffs concede that they created these lists themselves,[44] but do not explain what criteria they used to determine that the individuals on these lists qualified for PERS.

---

[37]Doc. 8-11 at 9 n.7.

[38]Doc. 25 at 15.

[39]Doc. 26 and Doc. 27.

[40]Doc. 26 at 3.

[41]Doc. 26 at 24 n.80 ("In discovery, [the Borough] provided lists of its disfavored borough personnel for 2011-2013. It has refused production for any further years.").

[42]*See* D.Ak. L.R. 7.1(a)(3).

[43]Doc. 41-1 at 2-10.

[44]Doc. 41 at 4 n.13 ("[The Borough] provided PFD documentation setting out the compensation paid and hours worked for those denied PERS benefits within its emergency services department for 2011-2013. The three sets of documents are each in excess of 90 pages—far too large for incorporation here. Nevertheless, the names of those emergency personnel triggering PERS [in at least 2011- 2012] are attached.").

Plaintiffs also cite the deposition testimony of Dennis Brodigan ("Brodigan"), the Borough's Emergency Services Director, who stated that 27.9% of his workforce worked more than 720 hours in 2013,[45] and the statement of plaintiff Andrea Richey ("Richey") that she knows of "at least 24 other employees (by name)" who worked hours similar to her own.[46] But, because plaintiffs have not established how many hours a Borough employee must work annually before he or she is eligible for PERS, or the extent to which the employees that Brodigan and Richey referenced were excluded from PERS, this evidence is insufficient. Plaintiffs have not met their burden of demonstrating that numerosity is satisfied.

## 2.    Commonality

Rule 23(a)(2) provides that a class action may be maintained only if "there are questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2) even a single common question will do."[47] To assess whether the putative class members share a common question, courts must identify the elements of each of the class members' claims and analyze each claim separately.[48] In *Wal-Mart*, the Supreme Court held that the plaintiffs' claims must share a common contention such that a determination of that contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."[49] Despite Rule 23(a)(2)'s ostensible focus on common "questions," the Supreme Court declared that "what matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather

---

[45]Doc. 27 at 10. *See also id*. at 3.

[46]Doc. 26 at 15 ¶ 4.

[47]*Wal-Mart*, 131 S.Ct. at 2556 (quotation marks and alteration omitted).

[48]*Parsons*, 754 F.3d at 676; *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ("[W]e must analyze each of the plaintiff's claims separately. Each potential class must be analyzed on its own merits, with consideration given to the elements of the claim at stake.") (citation omitted).

[49]*Wal-Mart*, 131 S.Ct. at 2556.

the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."[50]  Where a defendant's allegedly injurious conduct differs from plaintiff to plaintiff, as it did among the 3,400 stores involved in *Wal-Mart*, common answers are unlikely to be found.[51]  But, where "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," there is a common question.[52]

Plaintiffs argue that commonality is satisfied because the Borough discriminated against plaintiffs by excluding them from PERS while including "virtually identical" other employees.  Plaintiffs contend that the class' "common harm" is exclusion from PERS "on account of arbitrary job classifications."[53]  But plaintiffs fail to identify the elements of any of their claims or explain why a determination that the class was improperly excluded from PERS would be central to the validity of any of them.  Further, plaintiffs do not specifically identify any job classifications that plaintiffs believe are arbitrary, do not explain the basis of these allegedly arbitrary classifications, and do not explain how or why these allegedly arbitrary classifications were applied consistently among the purported class.  Plaintiffs have not met their burden of demonstrating commonality.

### 3.    Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The inherent logic of the typicality requirement is that a class representative will

---

[50]*Id*. (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009)).

[51]*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

[52]*Id. See also* 1 *McLaughlin on Class Actions* § 4:7 (11th ed. 2014) ("Commonality . . . is satisfied where the district court makes a factually supported finding that key elements of proof required for the claims of the proposed class may be productively adjudicated for all class members at once, and the common answers yielded by that adjudication will drive the resolution of the litigation.").

[53]Doc. 25 at 17.

adequately pursue her own claims, and if those claims are 'typical' of those of the rest of the class, then her pursuit of her own interest will necessarily benefit the class as well."[54]  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."[55]  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"[56]

The entirety of plaintiffs' typicality argument is their conclusion that typicality is satisfied.  As the Borough observes, plaintiffs' motion does not mention any of the named plaintiffs nor point to facts that show that their claims are typical of the class members' claims.  Plaintiffs do provide an affidavit from Richey in which she attests to working at least 750 hours per year for twelve of her thirteen years as a Borough employee and commonly working between 48-60 hours per week.[57]  These facts are inadequate because plaintiffs do not explain how many hours Richey needed to work annually to become PERS eligible.  If the answer is 750, plaintiffs do not explain why, or where that number comes from.  Nor do plaintiffs provide affidavits from any of the other thirteen named plaintiffs.[58]  Plaintiffs have not met their burden of demonstrating that typicality is satisfied.

---

[54]*Newberg* § 3:28.

[55]*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998).

[56]*Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)).

[57]Doc. 26 at 15 ¶¶ 3, 5.

[58]Plaintiffs' Complaint names fifteen plaintiffs: Andrea Richey, Ryan Greiling, P. Daniel Carter, Christian M. Hartley, Larry Fletchenhier, LuJean Fletchenhier, Beunice T. Tatum, Robert L. O'Mara, Daniel G. Gavoni, James J. Carnahan, Robert C. Diaz, Sandra J. Hoeft, Paula Brown, Daniel F. Clemons, and James Keel.  Doc. 8-32 at 1 n.1.  In August 2014 Sandra J. Hoeft was dismissed from the case.  Doc. 8-41 at 1.

### 4. Adequacy

Rule 23(a)(4) provides that a class action may be maintained only if the "representative parties will fairly and adequately protect the interests of the class." Additionally, Rule 23(g) requires the court to consider class counsel's "ability to fairly and adequately represent the interests of the class."[59]  Thus, the court's "adequate representation inquiry" has two prongs: "adequacy of the proposed class representative and adequacy of the attorneys seeking appointment as class counsel."[60]

#### a. Adequacy of the proposed class representatives

Plaintiffs assert that the named plaintiffs are adequate class representatives because they "confront the same discriminatory barriers" that the proposed class members confront, and they "share the common interest of obtaining a judicial declaration" that the Borough must allow them to participate in PERS.  This is yet another example of plaintiffs merely pleading compliance with Rule 23.  Plaintiffs do not cite facts or evidence to support their assertions, fail to mention any of the named plaintiffs specifically, and fail to specifically describe the "discriminatory barriers" these named plaintiffs have confronted.  Without these and other basic details regarding the named plaintiffs, the court is unable to determine whether they have any conflicts of interest with the proposed class, or whether they are each qualified to serve as a class representative.[61]  Plaintiffs fail to meet their burden of demonstrating compliance with this provision of Rule 23.

---

[59]Fed. R. Civ. P. 23(g)(1), (4).

[60]*Newberg* § 3:54.  *See also* on *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

[61]*See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (describing the two questions that determine legal adequacy for purposes of Rule 23(a)(4) as whether the named plaintiffs (1) have any conflicts of interest with the class or (2) maintain "'a sufficient interest in, and nexus with, the class so as to ensure vigorous representation.'") (quoting *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir.1978)).

### b. Adequacy of class counsel

Rule 23(g) states that in appointing class counsel the court *must* consider the following four factors: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."[62]  Further, the rule states that the court *may* "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[63]  Among these additional, discretionary considerations are whether class counsel has a conflict of interest with the class[64] and the quality of class counsel's briefing.[65]

Plaintiffs' class certification motion does not present any information about class counsel.  In plaintiffs' reply, however, plaintiffs' counsel asserts that senior partners Ronald A. Offret and Terry C. Aglietti have "a combined 82 years of legal representation—with 40 and 42 years of experience respectively."[66]  Plaintiffs' counsel also asserts that associate Jon Wiederholt "brings with him a wealth of knowledge and personal experience as a former [Borough] employee."[67]  Plaintiffs' counsel fails to provide the court with any of the information that the court must consider under Rule 23(g)(A).  Plaintiffs' showing is plainly inadequate.

---

[62]Fed. R. Civ. P. 23(g)(A).

[63]Fed. R. Civ. P. 23(g)(B).

[64]*Newberg* § 3.75.

[65]*Id*. § 3.76.

[66]Doc. 41 at 11.

[67]*Id*.

1  　　　　The Borough also argues, apparently pursuant to Rule 23(g)(B), that

2  Mr. Wiederholt has a conflict of interest because it appears that he is a member of the

3  class he seeks to represent as an attorney.[68]  In response, plaintiffs assert that "it may

4  well be the case that the [B]orough has PERS liability to Mr. Wiederholt,"[69] but this

5  would not create a conflict of interest because Mr. Wiederholt would recover a relatively

6  small amount of money compared to the Borough's "total potential liability" and because

7  plaintiffs' counsel doubts that the Borough would call Mr. Wiederholt as a witness in this

8  case.  The court agrees with plaintiffs that the cases upon which the Borough relies are

9  inapposite because they involve lawyers or their relatives seeking to act as class

10 representatives.  In such instances, a conflict exists because the class representative's

11 loyalty is divided between the class he represents as a plaintiff and his own financial

12 interests in recovering attorney's fees.[70]  No such concern exists where, as here, the

13 lawyer is a mere class member who, in that role, lacks authority to make decisions on

14 behalf of the class.  Further, the Borough does not contend that Mr. Wiederholt should

15 be disqualified because he will likely be called to testify as a witness.

16 　　　　Finally, the Borough asserts that it does not appear that plaintiffs' counsel "has

17 any significant prior class action experience," and that this inexperience is reflected in

18 plaintiffs' two faulty class certification motions and plaintiffs' counsel's allegedly

19 inadequate investigation of the facts in this case.[71]  Plaintiffs do not respond to these

20 arguments.  Based on plaintiffs' failure to respond to many of the Borough's arguments,

21 their failure to propose a cogent class definition, and their failure to demonstrate

22

23 　　　　[68]Doc. 36 at 14-15.

24 　　　　[69]Doc. 41 at 11.

25 　　　　[70]See Newberg § 3.77 ("[C]ourts theorize that one of the class representative's functions
26 is to monitor class counsel so as to ensure that counsel does not accept a relatively weak class
   recovery in return for the promise of a large fee.  If the class representative is also class
27 counsel, the class loses one check on counsel's capacity to sell out the class's claims.").

28 　　　　[71]Doc. 36 at 13-14.

compliance with any of Rule 23(a)'s requirements in two consecutive class certification motions, the court concludes that plaintiffs' counsel would not be satisfactory class counsel.[72]

## V.  CONCLUSION

Based on the preceding discussion, plaintiffs' motion for class certification is **DENIED**.

DATED this 7th day of April 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[72]*See Newberg* § 3:76 ("A record of poor performance in the current litigation, such as conclusory assertions regarding the requirements for class certification . . ., may indicate inadequate representation."); Fed. R. Civ. P. 23(g) advisory committee's notes to the 2003 Amendments ("If, after review of all applicants, the court concludes that none would be satisfactory class counsel, it may deny class certification, reject all applications, recommend that an application be modified, invite new applications, or make any other appropriate order regarding selection and appointment of class counsel.").